IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **LAVAUGHN BROWN** | CASE NO.: 8:26-cv-00191 |
| Plaintiff, | |
| v. | JUDGE: |
| **DAVID HUNTER, KATHERINE STOKES, CITY OF LAKELAND, CHIEF SAMMY L. TAYLOR** | **COMPLAINT** <br><br> **(Jury Demand Endorsed Hereon)** |
| Defendants. | |

**COMPLAINT**

Plaintiff Lavaughn Brown ("Plaintiff"), by and through undersigned counsel, submits this Complaint against Defendants City of Lakeland, a public subdivision of the State of Florida, David Hunter, and Katherine Stokes (collectively "Defendants") alleges as follows:

### I. INTRODUCTION

1. This action arises out of Defendants' cruel, unnecessary, and terrorizing arrest and of Plaintiff.

2. Plaintiff alleges, without limitation, that Defendant David Hunter used excessive force when he tazed Plaintiff, without justification, in Lakeland, Florida on January 25, 2024.

3. Plaintiff also alleges, without limitation, that Defendants David Hunter and Katherine Stokes unlawfully arrested him on January 25, 2024.

4.  Plaintiff brings this action against Defendants pursuant to 42 U.S.C. § 1983 for the deprivation of his clearly established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution.

5.  Plaintiff also brings this action pursuant to *Monell v. Dep't of Soc. Svcs. Of City of New York,* 436 U.S. 658 (1978).

## II.   JURISDICTION AND VENUE

6.  This Court has federal question subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343, as this action is brought, pursuant to 42 U.S.C. § 1983, to redress a deprivation of constitutional rights as set forth herein.

7.  This Court has personal jurisdiction over the Defendants and venue is proper in this Court under 28 U.S.C. § 1391(b)(1)-(2) because, upon information and belief, the Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district.

8.  Plaintiff seeks redress from Defendants Hunter and Stokes named herein in both their official and individual capacities.

9.  Plaintiff alleges Defendants Hunter and Stokes named herein were acting under and/or outside color of law and/or pursuant to the policies, customs, and/or usages of the City of Lakeland.

## III.   PARTIES

A. Plaintiff

10.  At all times relevant herein, Plaintiff Lavaughn Brown is an adult person and resident of the City of Lakeland, County of Polk, and State of Florida.

B.  Defendants

11.  At the time Defendant David Hunter subjected Plaintiff to excessive force and false arrest he was/is a police officer, employed by the City of Lakeland, Florida.

12.  At the time Defendant Katherine Stokes subjected Plaintiff to excessive force and false arrest she was/is a police officer, employed by the City of Lakeland, Florida.

13.  Upon information and belief, Defendant David Hunter resides in Polk County, Florida.

14.  Upon information and belief, Defendant Katherine Stokes resides in Polk County, Florida.

15.  Defendant City of Lakeland (the "City") is a municipal corporation located at City Hall, 228 S. Massachusetts Avenue, Lakeland, Florida 33801, in Polk County.

16.  The City maintains a division of police at the Lakeland Police Department.

17.  The City employs/employed all police officers identified herein.

18.  The mission statement for the City's police department is: "In partnership with the community, while affording dignity and respect to all persons, our mission is to maintain order and improve the quality of life of the citizens we serve."

19.  The vision for the City's police department is: "dedicated professionals working together to provide excellent service which enhances the quality of like in Lakeland."

20. The values of the City's police department are: "We are committed to doing things RITE: with **R**espect, **I**ntegrity, **T**eamwork, and **E**xcellence."

21. As will be shown below, Defendants violated the department's vision, mission statement, and values by participating in the cruel, unnecessary and terrorizing arrest of Plaintiff Lavaughn Brown.

### IV.    STATEMENT OF FACTS

Defendants Used Excessive Force and Issued a Baseless Charge

22. All preceding paragraphs are incorporated as if fully rewritten herein.

23. On or about January 25, 2024, Defendants Hunter and Stokes were near Sidney Ave and 7th Street W., investigating an incident unrelated to Plaintiff.

24. Defendants Hunter and Stokes were speaking with their fellow officers in the street as Plaintiff walked on the sidewalk towards them with his two small dogs.

25. Plaintiff noticed the officers standing in the street and inquired as to why they were present near his home.

26. Defendants Hunter and Stokes realized that Plaintiff had two unleashed small dogs with him.

27. Without reason, Defendant Hunter demanded that Plaintiff walk away from where he was standing on the sidewalk.

28. Plaintiff was not harming Defendant Hunter, Defendant Stokes, or others.

29. Plaintiff was lawfully present on the sidewalk.

30. Defendant Hunter then walked towards Plaintiff.

31. Plaintiff ran towards his home, which was only a few feet away.

32. Prior to Plaintiff running away from Defendants Hunter and Stokes, they did not:

    a. Tell Plaintiff he was under arrest;

    b. Tell Plaintiff that he committed a crime;

    c. Tell Plaintiff that he was not free to leave;

    d. Tell Plaintiff that he was a suspect in a crime; nor

    e. Tell Plaintiff that he had reason to believe that Plaintiff was associated with the incident they were previously investigating prior to Plaintiff's arrival.

33. Furthermore, at no time did Defendants Hunter and Stokes witness:

    a. Brandish a weapon;

    b. Verbally threaten his safety or others;

    c. Physically harm anyone; nor

    d. Commit any crime to warrant an arrest.

34. Defendants Hunter and Stokes ran after Plaintiff.

35. Three seconds later, without warning, Defendant Hunter deployed his Taser into Plaintiff's back and upper right shoulder.

36. The force of the Taser caused Plaintiff to fall to the ground face-first.

37. As Officer Stokes continued to run toward Plaintiff she yelled, "stupid."

38. As Plaintiff laid face down on the ground, Defendants Hunter and Stokes never witnessed Plaintiff:

5

    a. Refuse to comply with commands;

    b. Resist arrest;

    c. Brandish any weapons;

    d. Verbally threaten them or others; nor

    e. Physically attack them or others.

39. Instead, while Plaintiff laid face down on the ground, he:

    a. Screamed out in pain after sustaining mouth injury;

    b. Remained still; and

    c. Allowed the Defendants to place his hands behind his back so they could effectuate his unlawful arrest.

40. After Defendants Hunter and Stokes placed Plaintiff in handcuffs, Plaintiff said, "I'm sorry, can y'all please stop? I didn't do anything" to which Defendant Stokes responded, "You're sorry now."

41. Plaintiff then asked, "what did I do though?"

42. To which an officer responded, "you gotta have your dog on a leash."

43. Defendant Hunter then conducted a search of Plaintiff and did not find any weapons or contraband.

44. Defendant Hunter escorted Plaintiff to a police cruiser and placed him in the backseat.

45. Defendant Hunter transported Plaintiff to Lakeland Regional Health where he received medical treatment.

46. Defendant Hunter then transported Plaintiff to Polk County Jail.

47. Defendant Hunter charged Plaintiff with:

    a. Resisting an officer without violence, and

    b. Probation violation

48. Defendants Hunter and Stokes do *not* issue Plaintiff a citation in violation of Polk County City Ordinance Chapter 4, Article 2, Section 4-27 (b), despite reporting that Plaintiff did not have his dogs on a leash as required under the Ordinance.

49. On May 9, 2024, the Polk County Court entered a disposition of adjudication withheld for Plaintiff's charge of resisting an officer without violence.

50. Despite this incident, the City did not discipline Defendants Hunter and Stokes for their misconduct that resulted in the deprivation of Plaintiff's constitutional rights.

51. Despite this incident, the City did not train Defendants Hunter and Stokes on the proper way to approach an unarmed, non-resistant, non-violent, subject such as Plaintiff.

52. Despite this incident, the City did not train Defendant Hunter or Stokes on the appropriate use of force when encountering an unarmed, non-resistant, non-violent, subject such as Plaintiff.

53. Finally, despite this incident, the City did not train Defendant Hunter the proper protocol to deploy his taser without violating an individual's constitutional rights to be free for excessive force.

## V.  CLAIMS ALLEGED

### COUNT I
### (Excessive Force Against Defendants Hunter and Stokes)

54. All preceding paragraphs are incorporated as if fully rewritten herein.

55. This claim is brought pursuant to Title 42 U.S.C. § 1983.

56. Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

57. The Fourth Amendment to the United States Constitution states, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…."

58. The United States Supreme Court has long held that where officers use force in the arrest or detention of a citizen that is excessive, it violates the Fourth Amendment to the United States Constitution. *See generally*, draft *Graham v. Connor*, 490 U.S. 386 (1989) (determining that a use of force analysis requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake).

59. While acting under color of law, Defendants Hunter and Stokes deprived Plaintiff of his well-established right to be free from excessive force.

60. In other words, Plaintiff asserts that he had the well-established constitutional right not to be subjected to excessive force while being arrested, even if his arrest could have been otherwise proper.

61. At all times relevant to this matter, Defendants Hunter and Stokes were clothed with the authority of the state and misused that authority.

62. In this case, Plaintiff claims that Defendants Hunter and Stokes used excessive force when they arrested and/or seized Plaintiff, to wit:

   a. Defendant Hunter deployed his Taser into Plaintiff's back despite Plaintiff posing no risk or threat to the officers, himself, or the community;

   b. Defendants Hunter and Stokes placed Plaintiff into handcuffs;

   c. Defendants Hunter and Stokes took Plaintiff into custody despite Plaintiff allegedly committing a non-arrestable offense;

   d. Defendant Hunter transported Plaintiff to the Polk County Jail; and

   e. Defendant Hunter effectuated his processing and booking at Polk County Jail in violation of state law.

63. As a direct and proximate result of Defendants Hunter and Stokes actions, as set forth above, Plaintiff has been damaged, including but not limited to physical pain, mental anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, the loss of sense of dignity, and legal fees and costs.

## COUNT II
### (False Arrest Against Defendants Hunter and Stokes)

64. All preceding paragraphs are incorporated as if fully rewritten herein.

65. This claim is brought pursuant to Title 42 U.S.C. § 1983.

66. The United States Supreme Court has also long held: Because arrests are seizures of persons, they must be based upon probable cause in order to be constitutional. *See Payton v. New York*, 445 U.S. 573, 585, (1980).

67. While acting under color of law, Defendants Hunter and Stokes deprived Plaintiff of his well-established right to be free from seizure without probable cause.

68. At all times relevant to this action, Plaintiff asserts that he had the well-established constitutional right to be free from an arrest or seizure not based on probable cause or other legal justification.

69. At all times relevant to this matter, Defendants Hunter and Stokes were clothed with authority of the state and misused that authority.

70. Defendants Hunter and Stokes arrested Plaintiff without probable cause or a warrant.

71. Defendant Hunter deployed his Taser and physically restrained/arrested Plaintiff without permission or consent to do so, to wit:

    a. Arrested and/or seized Plaintiff's person without probable cause to do so;

    b. Restrained Plaintiff;

    c. Locked Plaintiff inside a police cruiser; and

    d. Drove Plaintiff to the Polk County Jail.

72. Defendant Stokes placed handcuffs on Plaintiff, thus physically restraining him/arresting him without permission or consent to do so.

73. Defendants Hunter and Stokes observed no conduct and received no information which established probable cause to justify Plaintiff's pre-trial restraint, detention, or arrest.

74. Defendants Hunter and Stokes had no evidence that Plaintiff had committed an act or was in the act of committing an arrestable offense when they arrested him.

75. A violation of Polk County City Ordinance Chapter 4, Article 2, Section 4-27 (b) is not an arrestable offense.

76. Defendants Hunter and Stokes could have found probable cause to issue Plaintiff a citation, however they failed to establish probable cause for an arrestable offense.

    a. Defendants Hunter and Stokes did not arrest Plaintiff for his own protection nor for the protection of any other individual, including other officers, to wit:

    b. Plaintiff posed no threat to himself, Defendants Hunter and Stokes, or the community; and

    c. Plaintiff made no physical threats towards Defendants Hunter and Stokes or the community

11

77. Plaintiff made no verbal threats towards Defendants Hunter and Stokes or the community

78. As a direct and proximate cause of the aforesaid arrest without probable cause or other legal justification, Plaintiff was damaged, including but not limited to physical pain, mental anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, the loss of sense of dignity, and legal fees and costs.

## COUNT III
**(*Monell* Claim – Municipal Liability)**

79. All preceding paragraphs are incorporated as if fully rewritten herein.

80. This claim is brought pursuant to Title 42 U.S.C. § 1983.

81. This claim is brought per *Monell v. of Soc. Svcs. of City of New York,* 436 U.S. 658 (1978).

82. Official policies or customs can result from: (a) a formal regulation or policy statement; (b) an informal custom amounting to a widespread practice that, although not authorized by written laws or express policy is so permanent and well settled as to constitute a custom or usage with the force of law; (c) the decisions of employees with final policymaking authority; (d) the ratification of such final policymakers of the decisions, and the basis for them, of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (e) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

83. A municipality is liable under § 1983 when its agency's policy or custom, as evidence in any of the manners set forth above, is "closely related" to the ultimate constitutional injury suffered by the plaintiff, and/or causes or occasions the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

84. The City maintains an armed police force, the Lakeland Police Department, with the power to arrest citizens.

85. The City is also ultimately responsible for the assignment of personnel for training and disciplinary purposes.

86. The City is a person subject to suit under 42 U.S.C. § 1983 for the violation of Plaintiffs' rights under the United States Constitution.

87. The City is aware that its officers engage in violent behavior that involves excessive force in violation of the Fourth Amendment, which disproportionately involves African Americans, like Plaintiff.

88. In fact, on November 14, 2021, Officer Jason McCain and Officer Anton Jefferson approached Armani Evans', a black male, car while he was parked in a parking lot outside of Wild Greg's Saloon. Mr. Evans told the officers that he was going home when they asked him to exit his car.[1]

89. Officer Jason McCain and Officer Anton Jefferson reported that they smelled cannabis coming from Mr. Evans' car. Despite Mr. Evans posing no threat to

---

[1] [BLM alleges 'pattern of violent behavior' by Lakeland Police officers](#) (last accessed Jan. 22, 2026).

the officers or the public, Officer Jason McCain and Officer Anton Jefferson tased Mr. Evans and struck him several times with their fists and flashlights.[2]

90. In January of 2023, Chief Taylor reassigned the officers to "modified duty status" limiting their contact with the public, as community activists shed light on several excessive force complaints against the Department.[3]

91. Mr. Evans suffered multiple cuts on his face and lost a tooth as a result of his arrest by Jason McCain and Anton Jefferson.[4]

92. On January 5, 2022, Timothy Davis Jr. sat in his parked car waiting for his daughter at her bus stop when Officer Jason McCain and Officer Anton Jefferson approached his car. MR. Davis was not wearing his seatbelt and was not actively operating his vehicle, however the officers alleged seat belt violation and pulled Mr. Davis out of his car by his hair and struck him multiple times until he lost consciousness. As a result, Mr. Davis suffered from a broken jaw, broken right eye socket, and partial vision loss in his right eye. *Timothy Davis Jr. v. City of Lakeland et al*, Complaint, Case No. 8:CV02507. (M.D. Fla filed Nov. 3, 2023).

93. On December 18, 2022, Lakeland Police Officers Jason McCain, Dillon Cornn, Anton Jefferson, and Sergeant Mark Eby conducted a baseless traffic stop of Antwan Glover. They pulled Mr. Glover out of his vehicle, threw him to the ground, repeatedly punched him, and tased him multiple times despite his compliance. Despite

---

[2] *Id.*
[3] [Lakeland officers reassigned as more people allege police use of excessive force](#) (last accessed Jan. 22, 2026).
[4] [BLM alleges 'pattern of violent behavior' by Lakeland Police officers](#) (last accessed Jan. 22, 2026).

his compliance, the officers charged Mr. Glover with one count of resisting officers with violence and three counts of battery on a law enforcement officer. These baseless charges were eventually dropped; however, The City did not discipline the officers for their misconduct. *Antwan Glover v. City of Lakeland et al,* Complaint, Case No. 8:2024-cv-02913. (M.D. Fla filed Dec. 17, 2024).

94. On September 5, 2022, Jordan Ford was pulled over by Lakeland Police officers as they were attempting to locate a suspect involved in a domestic violence incident. Despite the domestic violence victim explaining to the officers that Mr. Ford was not the individual involved in the incident, the officers still proceeded to throw him to the ground, punch him, and kick him repeatedly resulting in injury. The officers then charged Mr. Ford with resisting arrest with violence and battery on a law enforcement officer. These charges were then appropriately dropped. However, as seen in other cases where Lakeland police officers use warrantless violence against Black Lakeland citizens, The City failed to discipline the officers. *Ford v. Garcia et al,* Complaint, Case No. 8:2024-cv-02091. (M.D. Fla filed Sept. 4, 2024).

95. Among Florida police departments, Lakeland has statistically used more force per arrest than 95% of departments statewide.[5]

96. Additionally, Lakeland Police Department has a larger racial disparity in its use of deadly force than 80% of departments statewide.[6]

---

[5] https://policescorecard.org/fl/police-department/lakeland (last accessed Jan. 22, 2026).
[6] *Id.*

97. In 2022, even though roughly 19.9% of the City's residents are Black, they made up nearly half of those arrested by the Lakeland Police Department.[7]

98. Additionally, over 54.5% of all protective action incidents carried out by the Lakeland Police Department were carried out against Black citizens.

99. This pattern and practice with respect to the use of excessive force, and its disproportional use against Black citizens, results in an unwritten policy or custom within the Lakeland Police Department of applying disproportionate force in officer interactions with Black citizens.

100. The aforesaid unwritten policy or custom put Plaintiff at an unreasonable risk of grievous bodily harm, injury, or death.

101. The Lakeland Police Department has an unwritten policy or custom pertaining to officer and community interactions that put Plaintiff at a higher risk of unreasonable force during his encounter with Defendants Hunter and Stokes.

102. The aforesaid unwritten policy or custom did in fact cause Plaintiff's injuries.

103. At all times relevant to this matter, Chief Sammy Taylor was the top policymaker for The City's Police Department.

104. Prior to and on the date of Plaintiff's unlawful arrest, Chief Sammy Taylor promulgated, knew of, acquiesced, and/or endorsed an unwritten

---

[7] Lakeland Police Department, 2022 OPS Annual-Report (www.lakelandgov.net).

practice/policy that permitted police officers to use excessive force on an unarmed, non-resisting, and non-violent individual to effectuate his unlawful arrest.

105. The City's practice of disproportionately using excessive force on Black citizens in Lakeland violates Plaintiff's well-established Fourth Amendment right to be free of unreasonable search and seizures.

106. For example, in 2022, "OPS completed a thorough review of all protective action incidents to determine any trends or patterns related to the age, race, and/or gender of subjects related to protective action incidents…".[8]

107. In 2022, even though roughly 19.9% of the City's residents are Black, they made up **67%** of the traffic stops by the Lakeland Police Department.[9]

108. These policies were the moving force behind the constitutional violation(s) that befell Plaintiff, to wit: Defendants Hunter and Stokes acted in conformity with these unwritten policies when they tased, arrested, charged, and subjected Plaintiff to excessive force, as asserted in this Complaint.

109. The unwritten policies and practices identified above undermine otherwise appropriate written policies maintained by The City.

110. The City is also liable under *Monell* because the department's training, decision-making- and policymaking with respect to using force is so inadequate that it shows the Lakeland Police Department's deliberate indifference to the constitutional right of citizens.

---

[8] *Id.*
[9] *Id.*

111. Under *City of Canton v. Harris*, liability may attach to a municipality if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the City can reasonably be said to have been delivery indifferent to the need." *City of Canton*, 489 U.S. at 390.

112. The above-mentioned circumstances show "the need for more or different training," as the Supreme Court outlined in *City of Canton v. Harris. Id.*

113. The City's toleration of and failure to properly discipline officers who engage in excessive force is evidence that Plaintiff's injuries are traceable to the City's custom of permitting excessive force, and it is evidence that the City has acted with deliberate indifference in failing to supervise its officers. See, e.g., *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (stating that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on Theory that the relevant practice is so widespread as to have the force of law").

114. The City's failure to adequately train its officers, including Defendants Hunter and Stokes, concerning the appropriate use of force directly and proximately caused the violation of Plaintiff's Fourth and Fourteenth Amendment rights.

115. As a direct and proximate result of The City's polices and unwritten customs set forth above, Plaintiff has been damaged, including but not limited to physical pain, mental anguish, embarrassment, humiliation, feelings of powerlessness,

harm to self-esteem, emotional distress, fear, anxiety, the loss of sense of dignity, and legal fees and costs.

## VI. JURY DEMAND

116. Plaintiff respectfully demands a trial by jury on all issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

A. That Plaintiff recovers for his pain and suffering, past and future medical expenses;

B. That Plaintiff recovers for all compensatory and consequential damages available under Florida and/or federal law in an amount to be determined by a jury in excess of this Court's jurisdictional amount, including past and future medical care and other economic and non-economic harm to be determined at trial;

C. That Plantiff receives all attorneys's fees per Florida law and/or federal law, i.e. Title 42 U.S.C. § 1988, as well as the costs or interst accrued as a result of this action and any other costs that may be associated with this action; and

D. That Plantiff receives any and all other relief that this Court deems equitable, just, and proper.

\*   \*   SIGNATURE PAGE FOLLOWS   \*   \*

Respectfully submitted,

*/s/ Justin S. Abbarno*
Justin S. Abbarno
State Bar No. 1027968
**DiCELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, Ohio  44060
Tel.:   (440) 953-8888
Fax:   (440) 953-9138
jabbarno@dicellolevitt.com

***Counsel for Plaintiff***